UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Brian Sears,

        Plaintiff,

        v.                         Civil Action No. 2:11-CV-138

Michael J. Astrue,
Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER
(Docs. 11, 16)

Plaintiff Brian Sears brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits.  Pending before the Court are Sears's motion to reverse the Commissioner's decision (Doc. 11), and the Commissioner's motion to affirm the same (Doc. 16).  For the reasons stated below, the Court DENIES Sears's motion and GRANTS the Commissioner's motion.

## Background

Sears was thirty-nine years old on his alleged disability onset date of September 1, 2008.  He completed high school, and worked for over fifteen years as an automobile mechanic.  During the alleged disability period, Sears lived with his mother in a mobile home.  He is single and has no children.

Sears is obese and suffers from neck pain, back pain, occasional numbness in his right arm and fingers, sleep apnea, and depression.  His neck and back pain are his most severe impairments, and he claims they preclude him from bending down or lifting five pounds or more, and require him to lay down or recline for approximately forty-five minutes to an hour four to six times each day.  (AR 49.)  In October 2009, he underwent neck surgery.  Approximately six weeks later, Sears saw Dr. Ralph Beasley for continuing neck and back pain.  (AR 400.)  Dr. Beasley assessed Sears as having "chronic opioid dependence for chronic pain problems in his neck and back," and referred him back to his primary care provider, Nurse Practitioner ("NP") Larry Lancaster.  (AR 401.)  Soon thereafter, on January 5, 2010, NP Lancaster advised Sears that he was no longer comfortable prescribing controlled substances to Sears, "given his persistent over[-]usage of medication."  (AR 474.)  Sears then met with Dr. Shagun Saggar seeking pain medication, but Dr. Saggar also declined the request and instead suggested that Sears attend an addiction clinic.  (AR 472.)  Despite admitting to Dr. Saggar that he was addicted to pain medications, Sears opted against attending the clinic and refused to accept a referral to an addiction specialist.  (*Id.*)

On September 29, 2008, Sears filed an application for social security disability benefits.  Therein, he alleged that, starting on September 1, 2008, he has been unable to work due to "severe neck and back aches along with headaches."  (AR 142.)  Sears's application was denied initially and upon reconsideration, and he timely requested an administrative hearing.  The hearing was conducted on May 5, 2010 by Administrative Law Judge ("ALJ") Dory Sutker.  (AR 27-67.)  Sears appeared and testified, and was

represented by non-attorney representative Michael Milne.  A vocational expert ("VE") also testified at the hearing.  (AR 57-66.)  On July 6, 2010, the ALJ issued a decision finding that Sears had not been disabled since September 29, 2008, the date his application was filed.  (AR 12-22.)  A few months later, the Decision Review Board ("DRB") reviewed the ALJ's decision and adopted the conclusion that Sears was not disabled, but issued a corrective decision to consider the March 2009 opinion of NP Lancaster.  (AR 7-8 (citing AR 333).)  Having exhausted his administrative remedies, Sears filed the Complaint in this action on May 26, 2011.  (Doc. 5.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can

still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945.  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Sears had not engaged in substantial gainful activity since the filing of his application on September 29, 2008.  (AR 14.)  At step two, the ALJ found that Sears had the severe impairments of degenerative disc disease of the cervical spine, status post-fusion surgery; degenerative disc disease of the lumbar spine; and obesity.  (AR 14-15.)  Conversely, the ALJ found that Sears's depression, anxiety, and sleep apnea were non-severe impairments.  (AR 15.)  At step three, the ALJ found that none of Sears's impairments, alone or in combination, met or medically equaled a listed impairment.  (*Id.*)

Next, the ALJ determined that Sears had the RFC to perform sedentary work, except that he could only occasionally climb stairs and ramps, balance, stoop, kneel, and

4

crouch; and could never crawl.  (AR 16.)  Given this RFC, the ALJ found that Sears was

unable to perform his past relevant work as an automobile mechanic.  (AR 20.)  Finally,

based on testimony from the VE, the ALJ determined that Sears could perform other jobs

existing in significant numbers in the national economy, including small products

assembler, car wash attendant, and parking lot attendant.  (AR 21-22.)  The ALJ

concluded that Sears had not been under a disability since September 29, 2008, the date

his application was filed.  (AR 22.)

<u>**Standard of Review**</u>

The Social Security Act defines the term "disability" as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  A person will be found disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work[,] but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a

"review [of] the administrative record *de novo* to determine whether there is substantial

evidence supporting the . . . decision and whether the Commissioner applied the correct

legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual

review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

<u>Analysis</u>

I.     **ALJ/DRB's Consideration of Nurse Practitioner Lancaster's Opinion**

Sears contends that the ALJ erred in failing to consider the opinion of NP Lancaster, who treated Sears frequently for over one year.  But the DRB issued a corrective decision for the specific purpose of "evaluat[ing] the weight afforded to [NP Lancaster's] opinion."  (AR 7.)  After performing this evaluation and noting that Lancaster was not an "acceptable medical source," the DRB concluded that Lancaster's opinion was entitled to "only limited weight" because (a) it was not supported by citation to relevant evidence; and (b) it was not consistent with the medical evidence of record, including medical treatment information and other objective evidence discussed in the ALJ's decision.  (AR 7-8.)  This analysis was proper, and substantial evidence supports the DRB and ALJ's factual findings regarding the medical evidence.

As a nurse practitioner and not a licensed physician or psychologist, Lancaster is not an "acceptable medical source," 20 C.F.R. § 404.1513(a), but rather, an "other source," defined in the regulations to include medical sources such as nurse practitioners, physician assistants, and chiropractors, and non-medical sources such as school teachers, daycare center workers, and rehabilitation counselors, 20 C.F.R. § 404.1513(d). *See* SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). Therefore, the DRB's statement that Lancaster was "not an acceptable medical source" was correct. (AR 7.) Nonetheless, Social Security Ruling ("SSR") 06-03p directs that opinions from "other sources" are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3. While the Commissioner is thus free to decide that the opinions of "other sources," including nurse practitioners like Lancaster, are entitled to no weight or little weight, those decisions should be explained. *See Marziliano v. Sullivan*, 771 F. Supp. 69, 75 (S.D.N.Y. 1991) (holding that opinion of "other source" is entitled to "some consideration"). Moreover, SSR 06-03p directs the Commissioner to use the same factors in evaluating the opinions of "other sources" as are used to evaluate the opinions of "acceptable medical sources," including treating physicians. SSR 06-03p, 2006 WL 2329939, at *4 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). These factors include but are not limited to the length of the treatment relationship, the frequency of evaluation, and the degree to which the opinion is supported and consistent with the record. *Id.*; *see* 20 C.F.R. § 404.1527(c)(2).

Given this law and NP Lancaster's treating relationship with Sears, the ALJ erred in failing to discuss Lancaster's March 2009 opinion. But the DRB corrected the error by analyzing Lancaster's opinion in a separate decision, in accordance with SSR 06-03p. Specifically, as noted above, the DRB found that Lancaster's opinion was unsupported and inconsistent with the record, which are proper factors to consider under 20 C.F.R. § 404.1527(c)(2)(iii) and (iv). Further, the record supports these findings. Lancaster's opinion consists of a one-page "Physician's Statement" to the "New Hampshire Employment Security" office, wherein Lancaster checked boxes indicating that Sears was "permanent[ly]" "disab[led]" starting in September 2008 as a result of "chronic neck pain," and could work for no more than two hours each day and three days each week. (AR 333.) Lancaster further opined that Sears could lift/carry no more than ten pounds and only five pounds on a frequent basis. (*Id.*)

Preliminarily, although not stated in either the ALJ's or DRB's decision, Lancaster's opinion that Sears was permanently disabled is entitled to little weight for the reason that, "the ultimate determination of whether a claimant is disabled under the Social Security Act is 'reserved to the Commissioner.'" *Giunta v. Comm'r of Soc. Sec.*, No. 10-4869-cv, 2011 WL 5868419, at *1 (2d Cir. Nov. 23, 2011) (quoting 20 C.F.R. § 404.1527(e)(1)). More importantly, and as noted by the DRB, the opinion lacks any explanation or citation to supporting evidence. Furthermore, as also noted by the DRB, Lancaster's opinion is not consistent with the objective medical evidence, which generally portrays Sears as an individual who suffered from debilitating pain during the alleged disability period, but who, at times, effectively treated that pain with medication;

8

opted against complying with several recommended treatment plans; and most importantly, engaged in drug-seeking behavior including overusing his pain medication and lying to treating providers to obtain more pain medication.  (*See* AR 19-20 (citing AR 253 ("getting [narcotics] sold on the street"), 414 (had arguments with mother about over-use of medications), 446 (Dr. Victoria Martin "not willing" to prescribe narcotics due to "overusing his pain medications"), 459 (Dr. Sarah Johansen declining to prescribe narcotics and stating, "this is a patient with a chronic narcotic dependence"), 472 (lying to Dr. Saggar about last time used pain medications, admitting addicted to pain medications, and declining offer to attend addiction clinic), 474 (declining Neurontin prescription, discontinued from primary care practice by NP Lancaster due to "persistent over[-]usage of medication"), 476 (Dr. Sheilla Bachelder questioning reports of pain and noting failure to advise of narcotics contract), 482 (declining to restart Neurontin), 486 ("overusing his pain meds"), 521 and 526 (indicating that OxyContin and Aleve helped relieve pain without causing side effects).)

It was proper for the ALJ to consider Sears's conspicuous drug-seeking behavior in assessing the true severity of his back and neck pain because, if Sears's goal was to obtain prescription pain medication, he was more likely to overstate the pain he was actually experiencing.  *See Berger v. Astrue*, 516 F.3d 539, 545-46 (7th Cir. 2008) (finding claimant's credibility undermined where he received a regimen of pain medication, including hydrocodone, from two different doctors); *Marrotte v. Barnhart*, 107 F. App'x 14, 16 (8th Cir. 2004) (upholding ALJ's findings discounting plaintiff's credibility because of record of drug-seeking behavior); *Edlund v. Massanari*, 253 F.3d

1152, 1157 (9th Cir. 2001) (holding that likelihood that claimant was exaggerating complaints of physical pain to "feed his Valium addiction" supported ALJ's decision to reject his testimony); *Morgan v. Astrue*, No. 11-cv-730-bbc, 2012 WL 1516755, at \*12 (W.D. Wis. May 1, 2012) (finding that ALJ properly relied on the claimant's "drug seeking behavior" in assessing the true severity of her back, neck, and shoulder problems); *Metz v. Astrue*, No. 1:06-CV-1509 (FJS/DRH), 2010 WL 2243343, at \*14 (N.D.N.Y. Apr. 21, 2010) ("A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations."); *Booker v. Astrue*, No. 08-5346 (PAM/SRN), 2009 WL 1886134, at \*38 (D. Minn., June 30, 2009) ("A claimant's misuse of medications is a valid consideration in an ALJ's credibility determination and drug[-]seeking behaviors can discredit a plaintiff's allegations of disabling pain."). Courts have found that, even when a claimant may validly require pain medication, an ALJ may still consider a plaintiff's overuse of prescribed medications when assessing the plaintiff's credibility. *See Anderson v. Barhart*, 344 F.3d 809, 815 (8th Cir. 2003) ("While we appreciate [plaintiff's] need for prescribed medications to treat the severe pain caused by his shoulder impairment, we do not think that undercuts the ALJ's finding on [plaintiff's] overuse of medications. A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations .") (citation omitted); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain"). Here, the ALJ's credibility assessment was integral to her RFC determination and ultimately to her and the DRB's determination of non-disability, given that the objective medical evidence does not reflect the severe degree of pain

alleged by Sears.  For example, as stated in the ALJ's decision, although Sears testified at the administrative hearing that he must frequently lie down throughout the day for up to an hour at a time to relieve his pain, "there is no indication in the medical evidence that [his] physicians [we]re aware of this difficulty.  Rather, some . . . recommended that he participate in a functional restoration program in an effort to get [him] back to work." (AR 19 (citing AR 407).)

Moreover, there are very few treating provider opinions in the record.  In fact, despite Sears's treatment with multiple physicians for his neck and back pain, the opinion of agency consultant Dr. Geoffrey Knisely appears to be the only medical opinion in the record which was prepared by a physician.  Although Dr. Knisely did not examine or treat Sears (as NP Lancaster did), he is a physician whereas Lancaster is not.  The Commissioner accurately points out that Lancaster's opinion is contrary to that of Dr. Knisely, who affirmed the earlier opinion of "Single Decisionmaker" (i.e., non-medical agency consultant) Donald MacArthur that Sears was able to perform light work with restrictions on his ability to climb, stoop, crouch, and crawl.  (AR 334 (referencing AR 315-22).)  As Sears points out, a "single decisionmaker" ("SDM") is not a medical professional; thus, courts have found that an RFC assessment from such an individual is entitled to no weight as a medical opinion.  *See, e.g., Johnson v. Barnhart*, No. 03-166-B-W, 2004 WL 1529296, at *4 (D. Me. June 24, 2004) (Report and Recommendation of Magistrate Judge) (opinion of SDM, as "a layperson," "entitled to no weight"), adopted by *Johnson v. Barnhart*, No. Civ. 03-166-B-W, 2004 WL 1572705 (July 13, 2004); *Velasquez v. Astrue*, No. 06-cv-02538-REB, 2008 WL 791950, at *3 (D. Colo. Mar. 20,

2008) ("An SDM is not a medical professional of any stripe, and the ALJ candidly recognized that [the SDM's] opinion was entitled to no weight as a medical opinion, nor to consideration as evidence from 'other non-medical sources.'")  But any error the ALJ may have made in weighing the opinion of SDM MacArthur as if he was a medical consultant is harmless, given that the ALJ did not heavily rely on this opinion in denying benefits.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (applying harmless error standard in social security context).

      In fact, the ALJ found that Sears was *more* functionally limited than the agency consultants opined, determining that Sears's RFC was for sedentary work instead of light work, as opined by consultants MacArthur and Dr. Knisely.  (*See* AR 20 ("While th[e agency] opinions were reasonable based upon the evidence contained in the record at that time, additional evidence received into the record at the hearing level convinces the undersigned that [Sears] was more limited than originally thought.").)  Moreover, in mentioning the agency consultants' opinions, the ALJ considered them as being on par with the other evidence that detracted from a finding of disability.  As discussed above, this other evidence included proof that: Sears's pain was reduced with medication; Sears failed to follow several prescribed treatment plans; and Sears was not credible due in large part to his drug-seeking behavior and dependence on pain medication.  The Court thus finds that the ALJ would have reached the same result even if she had explicitly recognized that the author of one of the agency opinions was not a physician.  Further, the ALJ properly relied on Dr. Knisely's opinion, along with all the other record evidence, in finding that Sears was not disabled.  (AR 20.)

**II.     ALJ's Step-Five Determination that Sears Could Perform "Other Work"**

Sears next argues that the ALJ erred in determining that Sears could perform the jobs of small products assembler, car wash attendant, and parking lot attendant, given that these are "light" jobs and the ALJ found that Sears was only able to do "sedentary" work. Even assuming this error, however, the Court finds that the ALJ's determination of non-disability may not be disturbed on this ground because the Medical-Vocational Guidelines ("the Grids") direct a finding of non-disability, as explained below. *See, e.g., Stafford v. Astrue*, 581 F. Supp. 2d 456, 460 (W.D.N.Y. 2008) (finding ALJ error at step four harmless "[b]ecause plaintiff was a younger individual with a limited education, able to perform a significant range of unskilled sedentary work, [and thus,] the Grids would have directed a finding of 'not disabled' in any event").

Because Sears established at step four that he could not perform his past work, the ALJ had the burden of proving at step five that he retained "a residual functional capacity to perform alternative substantial gainful work which exist[ed] in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  The ALJ ordinarily meets this burden by utilizing the applicable Medical-Vocational Guideline, 20 C.F.R. pt. 404, subpt. P, app. 2, although sole reliance on the Grids may be inappropriate where the claimant's exertional impairments are combined with nonexertional impairments. *Roma v. Astrue*, No. 10-4351-cv, 2012 WL 147899, at *4 (2d Cir. 2012); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).  The Second Circuit has explained:

> The grids "take[ ] into account the claimant's residual functional capacity in
> conjunction with the claimant's age, education and work experience."
> *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).  Based on these

> considerations, the grids indicate whether the claimant can engage in any
> substantial gainful work existing in the national economy.  Although the
> grid results are generally dispositive, exclusive reliance on the grids is
> inappropriate where the guidelines fail to describe the full extent of a
> claimant's physical limitations.  In particular, "sole reliance on the [g]rid[s]
> may be precluded where the claimant's exertional impairments are
> compounded by significant nonexertional impairments that limit the range
> of sedentary work that the claimant can perform."  *Id.*  In these
> circumstances, the Commissioner must "introduce the testimony of a
> vocational expert (or other similar evidence) that jobs exist in the economy
> which claimant can obtain and perform."  *Bapp*, 802 F.2d at 603.

*Rosa*, 168 F.3d at 78 (footnote omitted).  Thus, the mere existence of a nonexertional

impairment "does not automatically . . . preclude reliance on the guidelines."  *Bapp*, 802

F.2d at 603.  Rather, when a claimant's nonexertional impairments significantly diminish

his ability to work – over and above any incapacity caused solely from exertional

limitations – so that he is unable to perform the full range of employment indicated by the

Grids, then the Commissioner may not rely exclusively on the Grids and must use a VE

or other similar evidence to determine whether jobs exist in the economy which claimant

can perform.  *Id.*

Applying the Grids here, Rule 201.27 directs that a person of Sears's age (forty-

one in July 2010, when the ALJ issued her decision) and education (high school), who is

able to do unskilled, sedentary work, is not disabled.  (AR 34-35, 128.)  *See* 20 C.F.R. pt.

404, subpt. P, app. 2, r. 201.27.  Although the ALJ found that Sears had additional

postural limitations beyond those accounted for in sedentary work, the Court finds that

these limitations do not significantly erode the sedentary occupational base.

Specifically, the ALJ included in her RFC determination the limitations that Sears

could only occasionally climb, balance, stoop, kneel, and crouch; and could never crawl.

(AR 16.)  With respect to the climbing and balancing limitations, the Commissioner's

Program Operations Manual System ("POMS") provides that, "[a]s a general rule, a

small degree of limitation (e.g., the person retains the capacity to ascend and descend

ramps and stairs but cannot maintain balance on a ladder) would not significantly impact

on any range(s) of work."  POMS DI 25020.005.A.1.a; *see also* SSR 85-15, 1983 WL

31245, at *6 (1983) ("Where a person has some limitation in climbing and balancing and

it is the only limitation, it would not ordinarily have a significant impact on the broad

world of work.").  Regarding the stooping and crouching limitations, SSR 83-14 states:

"To perform substantially all of the exertional requirements of most sedentary and light

jobs, a person would not need to crouch and would need to stoop only occasionally (from

very little up to one-third of the time, depending on the particular job)."  SSR 83-14,

1983 WL 31254, at *2 (1983).  And SSR 83-15 states: "If a person can stoop

occasionally (from very little up to one-third of the time) in order to lift objects, the

sedentary and light occupational base is virtually intact."  SSR 83-15, 1983 WL 31245, at

*7; *see Frustaglia v. Sec'y of Health & Hum. Servs.*, 829 F.2d 192, 195 (1st Cir. 1987)

("It is fairly obvious that . . . a restriction [of only occasional bending] would have very

little effect on the ability to perform the full range of work at either the light or sedentary

level.").  Finally, with respect to the kneeling and crawling limitations, the POMS

instructs that, in general, these limitations – in and of themselves – would have "very

little impact" on the sedentary occupational base.  POMS DI 25020.005.A.4.b.

Applying these principles to Sears, the VE correctly testified that his additional

limitations, as determined by the ALJ, would have no effect on the range of sedentary

work that he could perform.  (AR 61-62.)  The VE stated: "Occasional stairs and ramps, occasional stooping, crouching[,] . . .  kneeling, . . . and crawling[,] I don't see those as impediments for sedentary work."  (AR 62.)  Accordingly, it is irrelevant whether (as determined by the ALJ) Sears could perform the "light" jobs of small products assembler, car wash attendant, and parking lot attendant, because application of the Grids establishes that there was a significant number of sedentary, unskilled jobs that Sears could perform.

## III.    ALJ's Development of the Record

Sears's final argument is that the ALJ erred in failing to fully develop the record. Specifically, Sears contends that the ALJ should have obtained the treatment records of Dr. Mark Bucksbaum, who treated and prescribed medication for Sears in February and March of 2010.  The argument easily fails, as these records are in fact part of the record that was before the ALJ.  (AR 517-32.)  The ALJ even cited to these records in her decision, stating that, "although [Sears] alleges that his pain significantly impacts his ability to perform most daily activities, [Sears] also acknowledges that Oxycontin and Aleve relieve his pain without causing any side effects."  (AR 19 (citing AR 521, 529).) Moreover, Sears fails to explain how Dr. Bucksbaum's treatment records would have affected the outcome of the proceedings, and thus he has failed to show that the ALJ did not fulfill her duty to develop the record.  *See Velasquez v. Barnhart*, No. 04 Civ. 9017(DLC), 2006 WL 3431190, at *4 (S.D.N.Y. Nov. 29, 2006) (rejecting plaintiff's argument that ALJ failed to develop the record where plaintiff "[had] not even indicated what relevance she believe[d] the supplemental records would have [had] to the disability determination"); *Batista v. Astrue*, No. 08-CV-2136, 2010 WL 3924684, at *11

16

(E.D.N.Y. Sept. 29, 2010) (finding that plaintiff's reference to documents not contained in the record, and her conclusory statement that these documents revealed the ALJ's failure to properly develop the record, were "insufficient to show that the ALJ did not fulfill his duty to develop the record").

## Conclusion

For these reasons, the Court DENIES Sears's motion (Doc. 11), GRANTS the Commissioner's motion (Doc. 16), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 15th day of May, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge